# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOSEPH FRASURE, *et al*.,                    Civil Action No. 1:24-cv-92

    Plaintiffs,                                 Litkovitz, M.J.

    vs.

CITY OF WYOMING, OHIO, *et al*.,              **ORDER**

    Defendants.

This matter is before the Court on defendants' *Daubert* motion and motion in limine regarding plaintiff's purported expert witness, Lawrence Hunter (Doc. 65). Plaintiffs opposed the motion (Doc. 67), and defendants filed a reply (Doc. 72).

## I.  BACKGROUND

### A.  Facts

On January 30, 2023, Wyoming, Ohio police officers pointed a weapon at plaintiff Joseph Frasure, Sr., and fatally shot his son, Joseph Frasure, Jr., while responding to a report of a burglary in progress. Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, alleging, among other claims, that the officers employed excessive force in violation of the Fourth Amendment. (Docs. 1, 52).

Plaintiffs retained Lawrence Hunter, a retired police captain from Connecticut, as an expert witness in this case. Dr. Hunter produced a report which plaintiffs attached to their complaint. (Doc. 1-1).[1] Pursuant to the Court's Amended Calendar Order, the parties were

---

[1] The report attached to plaintiffs' complaint (Doc. 1-1) appears identical to the report attached to defendants' *Daubert* motion and motion in limine (Doc. 65-1). For ease of citation and to minimize toggling between various documents, the Court will cite to the copy attached to the instant motion in limine.

required to disclose expert witnesses and submit expert reports no later than February 3, 2025. (Doc. 28). Defendants deposed Dr. Hunter on March 17, 2025 (Doc. 65-6), and then filed the instant motion to exclude or, alternatively, to limit Dr. Hunter's expert testimony (Doc. 65). Plaintiffs oppose defendants' motion (Doc. 67).

### B. Procedural Posture

Defendants have moved to exclude any opinion evidence offered by plaintiffs' purported expert, Dr. Lawrence Hunter, because plaintiffs failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B) and because Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) bar Dr. Hunter's testimony. (Doc. 65). Specifically, defendants contend that plaintiffs' disclosure did not comply with Rule 26 because: Dr. Hunter did not sign his report; he failed to identify the facts or data considered in forming his opinion; he failed to disclose his qualifications, including a list of all publications authored in the last ten years; and he failed to provide his deposition and trial testimony history from the last four years. (Doc. 65 at PAGEID 2786-90). Defendants further contend that Rule 702 bars Dr. Hunter's testimony because he is not qualified to render an expert opinion on excessive force (*id.* at PAGEID 2791-92); his opinion does not assist the fact finder because it infringes on the province of the Court and the jury by applying legal precedent and deciding the ultimate issue (*id.* at PAGEID 2792-94); and his opinion does not meet the requirements for reliability (*id.* at PAGEID 2794-2804).

Plaintiffs counter that the Rule 26 "procedural errors" in submitting Dr. Hunter's report were due to inexperience and have been or will be corrected. (Doc. 67 at PAGEID 2933-35). Plaintiffs further argue that Dr. Hunter's law enforcement experience and related education

2

qualify him as an expert in this case (*id.* at PAGEID 2935-36); Dr. Hunter's methodology was reliable (*id.* at PAGEID 2936-38); Dr. Hunter's testimony will assist the trier of fact (*id.* at PAGEID 2938-42); and Dr. Hunter's testimony should not be limited (*id.* at PAGEID 2942-43).

## II.     RULE 26 REQUIREMENTS

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), an expert disclosure must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

"Rule 26 mandates disclosure from each side of a case to enable the other side to prepare for trial and to prevent surprise tactics from affecting the case's outcome." *Baker v. Blackhawk Mining, LLC,* 141 F.4th 760, 772 (6th Cir. 2025). The rule "places a 'level of rigor and detail' on disclosing expert testimony[,]" and "[t]he expert opinion must 'outline a line of reasoning arising from a logical foundation' and 'include the "how" and "why," not just his conclusions.'" *Id.* (quoting *Adkins v. Marathon Petroleum Co., LP*, 105 F.4th 841, 850 (6th Cir. 2024)).

If a party fails to comply with Rule 26(a) or supplement disclosures as required by Rule 26(e), Rule 37(c) "prohibits the party from using 'that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Baker*, 141 F.4th at 772 (quoting Fed. R. Civ. P. 37(c)(1)). Failure to timely provide the facts or data considered by the witness in forming his opinion or failure to provide a comprehensive list of all cases in which an expert has testified in the previous four years renders

3

the disclosure deficient under Rule 26. *Id.* at 773 (rejecting the plaintiffs' claim that such information was "worthless" or otherwise "derived from freely available public resources"). "When an expert disclosure is deficient under Rule 26(a), Rule 37 exclusion is 'mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'" *Id.* (quoting *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010)).

In this case, plaintiffs' counsel acknowledges that she inadvertently failed to timely satisfy the Rule 26(a)(2)(B) requirements because "Dr. Hunter and [p]laintiffs' counsel are relatively inexperienced in the procedural rules regarding experts." (Doc. 67 at PAGEID 2934). Plaintiffs attached Dr. Hunter's unsigned report to their complaint. (Doc. 1-1). However, plaintiffs failed to provide Dr. Hunter's "qualifications, including a list of all publications authored in the previous 10 years" or the list of cases in which he testified during the previous four years, as Rule 26(a)(2)(B)(iv) and (v) require. Regarding the Rule 26(a)(2)(B)(ii) requirement that an expert provide the facts or data considered in forming his opinion, Dr. Hunter stated:

> To prepare for this case, Atty Smith sent me numerous videos, court documents, dispatch audio, the Wyoming (OH) Police Duty Manual, and other pertinent materials. I reviewed all materials provided by Atty Smith, with particular emphasis on the body-worn cameras, video-recorded officer interviews, Hamilton County press release, and crime scene photos.

(Doc. 65-1 at PAGEID 2814).

On December 30, 2024, defendants' counsel emailed plaintiffs' counsel specifically directing her attention to Rule 26(a)(2)(B) and asking that plaintiffs supplement their expert disclosures to comply with that Rule. (Doc. 65-2 at PAGEID 2843). The email also notified

4

plaintiffs' counsel that failure to timely supplement Dr. Hunter's expert disclosure would result in a motion to strike and/or limit his testimony. (*Id.*).

On February 13, 2025, defendants' counsel again emailed plaintiffs' counsel indicating that they still had not received Dr. Hunter's expert disclosure supplement, as required by the Federal Rules of Civil Procedure. (Doc. 65-3 at PAGEID 2845). When plaintiffs' counsel responded that she had "sent the below Hunter report four times," defendants' counsel again reiterated that they were not asking for Dr. Hunter's report, stating:

> Merely providing Dr. Hunter's report is not the same as disclosing an expert witness. As you know, a party cannot just disclose an expert by providing a report – a party must provide other information as well. The issue is not the production of his report – it is everything else required by Fed. R. Civ. P. 26(a)(2) when disclosing expert witnesses – which Plaintiffs have not provided.

(Doc. 65-4 at PAGEID 2848-49). Defendants' counsel then referenced his December 30, 2024 email and again outlined the deficiencies. (*Id.* at PAGEID 2849). Plaintiffs' counsel then indicated that she would ask Dr. Hunter for "information regarding publication and testimony." (Doc. 65-4 at PAGEID 2848).

On March 17, 2025, defendants deposed Dr. Hunter. (Doc. 65-6 at PAGEID 2855). At his deposition, Dr. Hunter testified that the "case experience" list he provided following defendants' February 13, 2025 emails still did not disclose his testimony history because he listed cases in which he had been retained to prepare a report, even if he did not testify or prepare the report requested. (Hunter Depo., Doc. 65-6 at PAGEID 2876-77).

More importantly, Dr. Hunter—even at his deposition—failed to identify all of the facts, data, or exhibits he considered in analyzing the officers' actions and reaching his conclusions. His report noted that he considered "numerous videos, court documents, dispatch audio, the

Wyoming (OH) Police Duty Manual, and other pertinent materials" that plaintiffs' counsel sent to him. (Doc. 65-1 at PAGEID 2814). When deposed on March 17, 2025—well after the expert discovery deadline—Dr. Hunter testified:

> It's on my hard drive at home, so I can't give you an exhaustive list, but I certainly can create a supplement to expose that. There was the 9-1-1 tape. There were other body-worn cameras by officers who were not at the scene. Other body-worn cameras from different officers. There were some reports, some data logs, dispatch times, things along those lines.

(Doc. 65-6 at PAGEID 2884). Dr. Hunter acknowledged that he did not disclose prior to his deposition all of the facts or data that he considered in forming his opinions (*id.*), and he was unable to recall specific videos, recorded interviews, or other documents that he considered in forming his opinions. (*Id.* at PAGEID 2884-87).

As plaintiffs admit that Dr. Hunter's expert report failed to comply with Rule 26(a)(2), they "can avoid the exclusion sanction by showing that [their] failure to comply with Rule 26 was 'substantially justified' or 'harmless.'" *Adkins*, 105 F.4th at 849-50 (quoting Fed. R. Civ. P. 37(c)(1)). *See RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 668 (6th Cir. 2024) (Where party fails to comply with Rule 26(a)'s requirements, "exclusion of such evidence is 'automatic and mandatory' unless the offending party can show that its nondisclosure was substantially 'justified or harmless.'") (quoting *Dickenson v. Cardiac & Thoracic Surg. of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004)).

Courts consider the following factors in assessing substantial justification and harmlessness:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*RJ Control Consultants, Inc.*, 100 F.4th at 668-69 (quoting *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015)).  The *Howe* factors need not be applied rigidly, and district courts enjoy broad discretion in applying them.  *Id.* at 669.  "The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion."  *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *Bentley v. Highlands Hosp. Corp.*, No. cv 15-97, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016)).

The first *Howe* factor weighs in favor of exclusion.  Even where a plaintiff has disclosed his expert's identity, area of expertise, and brief summary, a defendant experiences surprise and would have difficulty combating the expert's testimony at trial without more information.  *RJ Control Consultants*, 100 F.4th at 669.  Indeed, the "federal rule contemplates not only the identification of the expert, but also the provision of a written report containing a complete statement of all opinions and the basis and reasons therefor."  *Id.* (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (internal quotation marks omitted).  While Dr. Hunter's opinions are unsurprising given that his report was provided to defendants at the litigation's outset, the facts and information he considered in forming those opinions remain largely unknown.  Defendants attempted to cure that surprise by referring plaintiffs' counsel to the Rule 26(a)(2)(B) requirements via emails in December 2024 and February 2025 and by deposing Dr. Hunter.  (Doc. 65-2 at PAGEID 2843; Doc. 65-3 at PAGEID 2845; Doc. 65-4 at PAGEID 2848; Doc. 65-6 at PAGEID 2884-87).  However, those efforts were unsuccessful as Dr. Hunter acknowledged that he did not adequately include that information in his report and testified at his

7

deposition that he was unable to recall the specific information he considered in forming his opinions. (Doc. 65-6 at PAGEID 2884-87). *See EQT Production Co. v. Magnum Hunter Produc., Inc.*, 768 F. App'x 459, 468-69 (6th Cir. 2019) (finding surprise analysis weighed in favor of exclusion where damages calculation witness failed to disclose data underlying his opinion prior to his deposition). *But see American Power, LLC v. Harris*, Nos. 3:17-cv-347 and 3:21-cv-21, 2024 WL 5200803, at *2 (S.D. Ohio Dec. 23, 2024) (finding no surprise even though plaintiff failed to timely comply with Rule 26(a)(2)(B) where defendant received expert's report well before the deadline and could have deposed him but did not).

The second and third *Howe* factors weigh slightly in favor of exclusion. In some cases, courts have held that the ability to cross-examine witnesses by subsequent deposition or at trial may remedy the surprise and minimize impact on the trial. *Howe*, 801 F.3d at 749; *American Power*, 2024 WL 5200803, at *3 (citing *Howe*). In other cases, courts have upheld exclusion to avoid rescheduling trial or reopening discovery once it has closed because "allowing expert testimony would require the non-defaulting party 'to bear the effort and expense necessary to cure [plaintiffs'] failure to disclose,' which 'would arguably reward [plaintiffs] for [their] untimeliness and does nothing to deter similar conduct from future litigants." *RJ Control Consultants*, 100 F.4th at 669-70 (quoting *EQT Production Co.*, 768 F. App'x at 469).[2] In this case, defendants possessed Dr. Hunter's report well before the expert discovery deadline, requested supplementation twice, and travelled to Connecticut to depose Dr. Hunter. Now, after discovery is over and motions for summary judgment are pending, plaintiffs still have not

_____

[2] In *EQT Production Co.*, the Court noted that it had, at times, "held that the ability to cross-examine witnesses about late disclosures during trial both provided an opportunity to remedy surprise and minimized impact on the trial" and deemed those *Howe* factors "to be neutral, not pulling clearly in favor of or against" exclusion. 768 F. App'x at 469.

provided the specific information Dr. Hunter considered in forming his opinions. Requiring the disclosure of information and items considered in forming an expert opinion "ensures parties have the information they need to assess an expert's opinions and to effectively cross-examine him." *Brainchild Surgical Devices, LLC v. CPA Global Ltd.*, 144 F.4th 238, 256 (4th Cir. 2025). Under the circumstances present in this case, the Court finds that the second and third *Howe* factors weigh slightly in favor of excluding Dr. Hunter's report from consideration.

The fourth factor—the importance of the evidence—is frequently described as "cut[ting] both ways." *RJ Control Consultants*, 100 F.4th at 670 (quoting *Bisig*, 940 F.3d at 220). "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Id.* (quoting *Bisig*, 940 F.3d at 220). As will be more fully examined below, Dr. Hunter's report is not particularly important to the resolution of this matter. Thus, this factor neither weighs for nor against either party.

Finally, as their explanation for failing to comply with Rule 26(a)(2)(B), plaintiffs state only that "Plaintiffs' counsel receives voluminous, verbose, communications from Defendants[, and] Dr. Hunter and Plaintiffs' counsel are relatively inexperienced in the procedural rules regarding experts." (Doc. 67 at PAGEID 2934). This factor weighs in favor of exclusion. Even after defendants repeatedly referred plaintiffs to the appropriate requirements and the applicable federal rule, plaintiffs failed to comply. Indeed, in the memorandum in opposition to defendants' *Daubert* motion, plaintiffs still fail to understand that the Rule 26 requirements for expert witness disclosures are not "harmless technicalities" (Doc. 67 at PAGEID 2935) or that Dr. Hunter's vague references to "other pertinent materials" and "materials provided by Atty Smith" do not satisfy Rule

9

26(a)(2)(B). The expert disclosure rule specifically requires that an expert report "must contain" "the basis and reasons" for his opinions, "the facts or data considered by the witness in forming them," the witness's qualifications (including publications in the last 10 years), and a four-year list of prior testimony. Fed. R. Civ. P. 26(a)(2)(B).

To summarize, application of the *Howe* factors indicates that plaintiffs' failure to comply with Rule 26(a)(2)(B) was neither substantially justified nor harmless. Accordingly, Rule 37(c)(1) requires that Dr. Hunter's opinions be excluded as evidence on summary judgment and at trial.

## III. RULE 702 AND *DAUBERT* INQUIRIES

Although Dr. Hunter's opinions should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1), in the alternative and in the interest of thoroughness, the Court will evaluate whether Dr. Hunter's report satisfies the requirements imposed by Federal Rule of Evidence 702. Pursuant to Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 entrusts courts with a "'gatekeeping role' to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant.'" *In re Onglyza (Saxagliptin) and Kombiglyze (Saxagliptin and Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024) (quoting *Daubert*, 509 U.S. at 597). As the Sixth Circuit has explained:

10

> Parsing the language of [Rule 702], it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008). *See also United States v. Anderson*, 67 F.4th 755, 767 (6th Cir. 2023). The party proffering the expert must show by a preponderance of the evidence that Rule 702 is satisfied. *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1223-24 (6th Cir. 2025). Of course, "rejection of expert testimony is the exception, rather than the rule." *Id.* at 1224 (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530).

### A. Qualifications

Defendants contend that Dr. Hunter is not qualified to render opinions about whether the officers' use of deadly force[3] was "excessive" because he lacks specialized education or experience in processing or investigating crime scenes, officer-involved shootings, or ballistics. (Doc. 65 at PAGEID 2791-92). A witness cannot qualify as an expert "simply because he self-identifies as such," but the Sixth Circuit takes a "liberal view" of what satisfies Rule 702's "knowledge, skill, experience, training, or education" requirement. *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015). "Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience." *Id.*; *American Strategic Ins. Corp. v. Meyer*, No. 1:23-cv-119, 2025 WL

---

[3] Dr. Hunter's report states that he was "hired as an expert in the use of force to determine whether the actions taken by Officers Jones and Batts were reasonable in accordance with established court decisions and best law enforcement practices" and whether "the officers involved in killing Joe Frasure, Jr. fire[d] their weapons unnecessarily, or could they have found a different method to apprehend him?" (Doc. 65-1 at PAGEID 2812, 2820). Dr. Hunter was asked at his deposition whether he offered any opinions on the actions of Officer Warmack, and he testified, "So, I only looked at the shooting, the officers who fired their weapons. That was what I was looking at." (Doc. 47-1 at PAGEID 1340-41).

845560, at *3 (S.D. Ohio Mar. 18, 2025) (same quotation).  "[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."  *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

Plaintiff's expert, Lawrence Hunter, "spent 24 years in policing," retiring from the Waterbury, Connecticut Police Department at the rank of captain.  (Doc. 65-1 at PAGEID 2812). He holds a Ph.D. in leadership with a concentration in criminal justice and a master's degree in forensic psychology.  (*Id.* at PAGEID 2813).[4]  He previously commanded the Professional Standards Unit in Waterbury, which included "Internal Affairs, Inspectional Services, and Training Divisions."  (*Id.*).  His duties in that role included "reviewing and investigating Use of Force reports (Response to Resistance)" and investigating citizen complaints of officers' use of excessive force.  (*Id.*).  Dr. Hunter was retained as an expert in the use of force to evaluate the defendant officers' use of lethal force in this case.  (Doc. 65-6 at PAGEID 2882).

On the record as it stands, the Court is unwilling to deem Dr. Hunter "unqualified" to evaluate a police use of force.[5]  Employing a liberal view of Dr. Hunter's education and

---

[4] On the record before the Court, it is difficult to determine whether Dr. Hunter has taken or taught courses relevant to the issues in this case.  He listed in his report some classes he has taken and that he is "Force Science certified." (Doc. 65-1 at PAGEID 2813; *see also* Doc. 47-3, Doc. 67-3).  However, he testified at deposition that he did not examine the physics or mechanics of the shooting in this case, and he "wasn't looking at it as a [force] scientist. [He] was looking at it as an expert in police practices and what practices should be employed when doing something."  (Doc. 65-6 at PAGEID 2870-71).
[5] Defendants contend that Dr. Hunter does not adequately connect his knowledge and experience to his approach to this case.  (Doc. 72 at PAGEID 3079).  Specifically, Dr. Hunter has testified as an expert in only two cases—once to a Labor Board regarding a police officer's termination and once regarding domestic violence in a marriage dissolution.  (Doc. 65-6 at PAGEID 2876-77).  Although he reviewed Wyoming, Ohio's use of force policy, Dr. Hunter has never investigated an officer-involved shooting.  (*Id.* at PAGEID 2877, 2879).  He has never processed a homicide scene nor a scene involving an officer-involved shooting.  (*Id.* at PAGEID 2880).  Dr. Hunter's lack of training or experience in officer-involved shootings, however, is a topic for cross-examination rather than a basis for disqualifying him as an opinion witness.

experience investigating police uses of force, he likely possesses sufficient knowledge and experience to satisfy Rule 702's requirement.

### B. Assistance to the Trier of Fact

One of the core inquiries in determining expert admissibility is whether the expert's testimony will help the trier of fact understand the evidence or determine a fact at issue. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529; Fed. R. Evid. 702(a). "Although the Sixth Circuit has not ruled explicitly in this regard, other courts have held that when cases involve review of videotaped events, an expert's opinion should not be permitted when the expert is no better suited than the jury to interpret the video's contents." *Estate of Collins v. Wilburn*, 253 F. Supp. 3d 989, 992 (E.D. Ky. 2017) (citing *Dunlap v. Hood*, 2009 WL 362292, at *1 (N.D. Tex. 2009)). *See In re FCA US LLC*, MDL No. 2744, 2022 WL 17652686, at *4 (E.D. Mich. Dec. 13, 2022) ("[C]ourts have limited the testimony to merely explaining the process used to extract and enhance images, while disallowing any opinion testimony about what the images depict, especially where jurors are equally able to view the images and assess what is depicted."); *Slack v. City of San Antonio*, No. SA-18-cv-01117, 2021 WL 1390428, at *3-4 (W.D. Tex. Apr. 13, 2021) (excluding forensic video expert from testifying as to what a video depicts because "such testimony does nothing to assist the jurors, who can make their own determination as to whether the video is consistent with or contradicts the various parties' account of the events leading up to and during the police shooting"); *Grover v. BMW of N. Am., LLC*, No. 1:19-cv-12, 2022 WL 205249, at *5 (N.D. Ohio Jan. 24, 2022) (favorably quoting *Estate of Collins*, 253 F. Supp. 3d at 992)). *See also United States v. Glenn*, 146 F.4th 485, 491 (6th Cir. 2025) (finding that trial court should have excluded expert testimony from law enforcement Special Agent because "the

13

jury was just as competent as Agent Almonte to interpret the common words and phrases used in these text messages") (quoting *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013) ("A witness, lay or expert, may not form conclusions for a jury that they are competent to reach on their own.")).

In *Estate of Collins*, the plaintiffs—whose decedent died as a result of alleged police excessive force—sought to admit the report of expert witness Dr. George Kirkham, a former police officer[6] and Criminology Professor Emeritus at Florida State University.  253 F. Supp. 3d at 991.  Dr. Kirkham's report concluded that the officers in that case violated established law enforcement standards and proximately caused the preventable harm the plaintiffs' decedent suffered.  *Id.* at 992.  He sought to testify that "failure to comply with established procedures led to the use of force and that the force was unreasonable and excessive."  *Id.* (comma omitted).  The incident at issue there had been captured on video, and neither party challenged the video recording's validity.  *Id.*  The court in that case granted defendants' motion to exclude Dr. Kirkham's testimony, finding that:

> Rule 702's "helpfulness" standard requires a valid connection to the pertinent inquiry as a precondition to admissibility.  Likewise, credibility determinations fall within the province of the jury.  In this case, there is little need for Plaintiff's expert to tell the jury whether the officers' actions were objectively reasonable under the circumstances because a video captures the incident.  Dr. Kirkham's testimony will not be of any assistance to the jury in determining whether or not excessive force was used.  As such, it does not satisfy the requirements of FRE 702.

*Id.* (internal citations and quotation marks excluded).

---

[6] Report of George L. Kirkham, *Estate of Collins v. Wilburn*, 253 F. Supp. 3d 989, 992 (E.D. Ky. 2017) (No. 16-cv-00068), 2016 WL 9233670.

In this case, Dr. Hunter's "analysis" of each officer's actions consisted solely of his narration of the video's contents.  (Doc. 65-1 at PAGEID 2823-34).  Indeed, Dr. Hunter isolated thirteen still photos from the video and "explains" what each image "shows."  (*Id.*).

Following the narration of the video, Dr. Hunter reviewed a recorded statement Officer Jones provided to investigators and speculates as to what Officer Jones "meant" in his statement or "believed" as the shooting unfolded.  (Doc. 65-1 at PAGEID 2834-35).  For example, Dr. Hunter opined:

> At 13:48, OFC Jones stated that while the van was egressing from the rear, he (Jones) was "in a pretty okay spot."  Meaning that he believed he would not have been struck by the minivan.  At 13:55, OFC Jones states that he saw the minivan cut the corner.  In other words, the minivan turned toward the street, attempting to flee from officers rather than strike them.  This indicates that he believed that the operator was trying to escape and not cause any harm to him or his partner standing to the right.

(*Id.* at PAGEID 2835).

Dr. Hunter is no better suited than the fact finder to watch the videos or observe Officer Jones' recorded statement.  Indeed, Dr. Hunter's law enforcement experience and education does not qualify him to speculate what Officer Jones "believed" at any time during the events leading up to the shooting or to explain the meaning of Officer Jones' statement.  A juror is just as competent as Dr. Hunter to interpret common and ordinary English language.  *See United States v. Glenn*, 146 F.4th at 491.  Therefore, Dr. Hunter's analysis fails to assist the trier of fact.  In addition, any probative value it may have is substantially outweighed by the danger of confusing the issues, misleading the fact finder, or simply wasting time, and it should be excluded pursuant to Federal Rule of Evidence 403.

### C. Reliability

"As for reliability, Rule 702 only allows an expert to testify when the opinion is (1) 'based on sufficient facts or data,' (2) 'the product of reliable principles and methods,' and (3) 'a reliable application' of those 'principles and methods to the facts of the case.'"  *Baker*, 141 F.4th at 766 (quoting Fed. R. Evid. 702(b)-(d)).  "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."  *In re Onglyza*, 93 F.4th at 346 (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30). "District courts evaluating the reliability of expert testimony based on the expert's personal knowledge or experience, may forgo the *Daubert* factors,[7] and instead focus on whether the expert's testimony 'explain[s] how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts."  *Cook v. Erie Ins. Co.*, 478 F. Supp. 3d 658, 662 (S.D. Ohio 2020) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005)) (footnote added).  When evaluating non-scientific opinion testimony, trial courts enjoy considerable leeway in determining reliability.  *Id.* at 666 (citing *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671-72 (6th Cir. 2010)).

In this case, plaintiffs have failed to establish that Dr. Hunter's opinions are either the product of reliable methods or a reliable application of those methods to the facts of this case. First, Dr. Hunter's report lacks a reliable foundation.  Dr. Hunter outlined the basis of his report as follows:

---

[7]As to reliability, courts evaluating expert scientific evidence are guided by four inquiries:  (1) whether the technique is testable; (2) whether it has been subjected to peer review; (3) the error rate and whether there are any standards for lowering it; and (4) whether the technique is generally accepted in the relevant scientific community. *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021) (quoting *Daubert*, 509 U.S. at 593-94, 597 (1993)).

> This case involves the use of deadly force by duly sworn police officers. As such it is necessary to establish the narrow parameters that the US Constitution, courts, state law, policies, and procedures dictate law enforcers may use force. The force police officers may use and will be analyzed includes their mere presence and verbal commands and escalates up to and including the use of deadly force.

(Doc. 65-1 at PAGEID 2814). Dr. Hunter bases much of his report on legal standards that, even if accurately summarized, do not apply in this case. Dr. Hunter's report is based on, at varying times, "law enforcement takeaways and training" from three United States Supreme Court cases (Doc. 65-1 at PAGEID 2815-18), sections of the Wyoming, Ohio Police Department policies and procedures manual (*id.* at PAGEID 2818-19, 2821-22), a non-binding "National Consensus Policy and Discussion Paper on the Use of Force" (which Dr. Hunter admits "is at odds with" the Wyoming police manual) (*id.* at PAGEID 2819-20, 2822), the mission statement from the Wyoming Police Department's website (*id.* at PAGEID 2820), a paper published by the Police Executive Research Forum ("PERF") entitled "Critical Issues in Policing Series: Guiding Principles on Use of Force" (*id.* at PAGEID 2821), and a "use of force continuum" recognized by the National Institute of Justice (*id.* at PAGEID 2822-23).

Based on these varying sources, Dr. Hunter reached approximately three pages of "findings," including: (1) "In connection with the above consensus of the policymakers and police executives from multiple law enforcement disciplines and organizations, the officers failed to take the necessary steps to preserve life, as their department mission statement declares" (Doc. 65-1 at PAGEID 2835); (2) "It is my expert opinion that Officers [sic] Drew Jones and Officer Jordan Batts used force in excess of best practices and national standards" (*id.* at PAGEID 2836); (3) "All three officers could have used more wisdom in de-escalation techniques" (*id.*); (4) "Officers should have recognized that Joe Jr's first instinct was to evade

17

capture"; (*id.* at PAGEID 2837); (5) "It is possible that Joe Jr blew his horn to warn officers to move out of the way" (*id.*); (6) Officer Batts "turning around to confront the situation was not the best decision, nor was it in line with de-escalation philosophy" (*id.*); (7) Crime scene photos "indicate that the minivan was already veering toward the asphalt escape route" (*id.*); and (8) "The killing of Joe Jr is what the WPD mission statement and PERF's guides on the use of force stand against" (*id.*).

In this case, plaintiffs allege the defendant officers violated Joe Frasure, Jr.'s Fourth Amendment right to be free from excessive force during arrest. (Doc. 52). Fourth Amendment claims require a determination of whether the force used was objectively reasonable under the totality of the circumstances. *Barnes v. Felix*, 605 U.S. 73, 145 S.Ct. 1353, 1357-58 (2025). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Fourth Amendment reasonableness does not require "only the best technique available at the time." *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996) (The "Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances")).

Dr. Hunter's application of various legal and other standards in this case undermines the reliability of his report. For example, Dr. Hunter notes:

> Officers Jones and Batts had their weapons drawn before seeing any potential problem or the need for deadly force. To be sure, it is not an uncommon tactic for officers to pull their weapons in a possible burglary situation. However, *with hindsight*, we know that officers were responding to a suspicious person's call. Officers responding with their weapons at the ready seems excessive, especially in today's law enforcement climate. . . .

18

(Doc. 65-1 at PAGEID 2836 (emphasis added)). Dr. Hunter's use of "hindsight" in evaluating the reasonableness of the officers' actions is contrary to controlling precedent, *Graham*, 490 U.S. at 396, and irrelevant to evaluating an officer's use of force.

Dr. Hunter also repeatedly analyzes the officers' actions in accordance with "best practices" and "better" alternative approaches. (Doc. 65-1 at PAGEID 2836: "A better approach may have been to get to the backyard, slowly round the corner, and assess the situation with their hand on their holstered weapons."; Doc. 65-1 at PAGEID 2836: "A better approach may have been to hold their ground, slowly walk toward the vehicle, or seek cover if they feared the occupant(s) would suddenly exit the vehicle with weapons."; Doc. 65-1 at PAGEID 2837: "OFC Batts could have kept running down the slight hill to safety. . . . His turning around to confront the situation was not the best decision, nor was it in line with de-escalation philosophy."; Doc. 65-1 at PAGEID 2837: "Best practice suggestions from professional organizations indicate that police officers do not fire their weapons into or at moving vehicles unless the operator deliberately intends to strike the officer or another person."). But the failure to use "best" or "better" practices does not establish that a constitutional violation has occurred. "The Fourth Amendment . . . does not require police officers to take the better approach[,] . . . only that they take a reasonable approach." *Roell v. Hamilton Cty*., *Ohio*, 870 F.3d 471, 486 (6th Cir. 2017) (quoting *Cook v. Bastin*, 590 F. App'x 523, 528 (6th Cir. 2014)). "[E]xpert testimony, which essentially opines on the best approach that the deputies could have taken in ideal circumstances, . . . does not establish that the [officers] violated [the suspect's] clearly established rights." *Roell*, 870 F.3d at 486.

19

Dr. Hunter also opines, "All three officers could have used more wisdom in de-escalation techniques." (Doc. 65-1 at PAGEID 2836). Officers, however, are not "prohibited from using *any* physical force against [a suspect] before first attempting alternative de-escalation techniques." *Roell*, 870 F.3d at 482 (citing *Cook*, 590 F. App'x at 530).

Dr. Hunter also failed to recognize or address the applicable legal standard for an officer's use of deadly force against the driver of a motor vehicle. *See Raimey v. City of Niles*, 77 F.4th 441, 449 (6th Cir. 2023) ("Deadly force is justified against a driver who objectively appears ready to drive into an officer or bystander with his car, but generally not once the car moves away, leaving the officer and bystanders in a position of safety, unless the officer's prior interactions with the driver suggest that the driver will continue to endanger others with his car.") (internal quotation marks omitted) (quoting *Laitit v. Phillips*, 878 F.3d 541, 548 (6th Cir. 2017)). Dr. Hunter's use of standards that are clearly inapplicable to the questions in this case render his opinions unreliable. Furthermore, because Dr. Hunter uses standards that do not apply to the issue of excessive use of force, the report's probative value is substantially outweighed by a danger of confusing the issues and should be excluded under Federal Rule of Evidence 403.

As to methodology, "Courts have repeatedly found opinions unreliable when they were based more on an expert's 'subjective belief' than on an objective method that can be tested." *Madej*, 951 F.3d at 375. Simply put, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)). The opinions must "outline a line of reasoning arising

20

from a logical foundation." *Id.* (quoting *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir. 2005)).

Dr. Hunter's report fails to do so. First, his report reveals no discernible methodology. (Doc. 65-1). He makes no effort to explain how he reached his conclusions. Indeed, when deposed about his methods, Dr. Hunter testified:

> I looked at case law and I looked at best practices and just made a decision as to whether the actions that I was able to see were in line with that. Did I go out there and take measurements? If that's what you mean by scientific, I didn't take measurements or anything like that.

(Doc. 65-6 at PAGEID 2869-70). For example, Dr. Hunter concluded: "At no time was Warmack or Jones in danger of being struck. In my opinion, Batts and all officers could have or should have moved out of the way and stayed on the side of the vehicle." (Doc. 65-1 at PAGEID 2837). However, Dr. Hunter provided no explanation for this conclusion. He admittedly took no measurements and made no mathematical calculations involving the speed at which the vehicle was travelling, the relative positions of the officers, or whether the officers had the time and space to evade the moving vehicle.

Second, some of Dr. Hunter's "findings" are nothing more than obvious speculation. For example, Dr. Hunter found that "Joe Jr's first instinct was to evade capture," "[i]t is possible that Joe[,] Jr[.] blew his horn to warn officers to move out of the way," and Joe, Jr. was not "deliberately intend[ing]" to strike the officers. (Doc. 65-1 at PAGEID 2837). Dr. Hunter provided no basis for knowing the deceased's instincts or intentions.

In sum, plaintiffs have failed to establish that Dr. Hunter's opinions are either the product of reliable methods or a reliable application of those methods to the facts of this case.

21

Accordingly, his report should be excluded from consideration during both summary judgment and trial.

## IV.     CONCLUSION

Because plaintiffs failed to comply with Rule 26(a)(2)(B), because Dr. Hunter's report is neither helpful to the trier of fact nor the product of reliable methods, and because any probative value of the report is substantially outweighed by its danger of confusing the issues and misleading the fact finder, defendants' *Daubert* motion and motion in limine regarding plaintiff's purported expert witness, Lawrence Hunter (Doc. 65), is **GRANTED**.  Dr. Hunter's report is excluded from consideration during summary judgment and trial.


Date: 9/17/2025

Karen L. Litkovitz
United States Magistrate Judge